(C. D. 1675)

ATLANTIC SUPPLY CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 27, 1955)

*John D. Rode* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial \ attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:  The merchandise in controversy is described on the consular invoice as poppy-seed mills and grating mills.  Both items were classified by the collector of customs as food-grinding household utensils, in chief value of steel, and duty was imposed thereon at the rate of 40 per centum ad valorem as provided in paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339).

Although various claims for lower rates of duty are alleged by plaintiff in its protest, the one relied upon is that both of the mills should be classified as "* * * household * * * utensils, * * * not specially provided for (except * * * household food grinding or cutting utensils other than meat and food choppers), * * * Other: * * * Composed wholly or in chief value of * * * steel * * * 20% ad val.," pursuant to the terms of said paragraph 339, as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802).  At the trial, all other claims were abandoned.

The pertinent text of paragraph 339 is here set forth.

Paragraph 339 of the Tariff Act of 1930:

PAR. 339.  Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: * * * composed wholly or in chief value of * * * steel, * * * and not specially provided for, 40 per centum ad valorem; * * *.

Paragraph 339, as modified, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for (except articles composed wholly or in chief value of tin or tin plate, electric flatirons, fly swatters, illuminating articles, and household food grinding or cutting utensils other than meat and food choppers), whether or not containing electrical heating elements as constituent parts thereof:

   *      *      *      *      *      *      *

   Other:

   *      *      *      *      *      *      *

      Composed wholly or in chief value of iron, steel, copper, or antimony_____ 20% ad val.

At the trial, the only witness who appeared was Paul K. Hamburg, the owner of the plaintiff company, who was engaged in the business of importing household equipment and novelties.  He produced a

sample of the poppy-seed mill and a sample of the grating mill, which were received.in evidence as exhibits 1 and 2, respectively.

The witness testified that he had sold the poppy-seed mill all over the United States and that it was used solely to grind or crush whole poppy seeds into a pulpy condition.

With reference to exhibit 1, the poppy-seed mill, it apparently is not disputed that it is, in fact, a grinding machine, but it is the contention of the importer that it is not a *food*-grinding machine. The primary question for determination, therefore, upon this phase of the case, is whether poppy seed is a food.

"Food" is variously defined as follows:

Webster's New International Dictionary (1948):

**food,** *n.* \* \* \* **1.** Nutritive material absorbed or taken into the body of an organism which serves for purposes of growth, work, or repair and for the maintenance of the vital processes. \* \* \* **2.** Nutriment in solid form, as opposed to *drink*, which may also contain more or less nourishing material.

As used in laws prohibiting adulteration, etc., *food* is generally held to mean any article used as food or drink by man, whether simple, mixed, or compound, including food adjuncts such as condiments, spice, etc., and often excluding drugs and natural water. \* \* \*

Funk & Wagnalls New Standard Dictionary of the English Language (1942), page 955:

**food,** \* \* \* *n.* **1.** That which is eaten or drunk for nourishment; aliment; nutriment, in the scientific sense; any substance that, being taken into the body of animal or plant, serves, through organic action, to build up normal structure or supply the waste of tissue; nutriment; aliment, as distinguished from condiment. \* \* \*

Encyclopaedia Britannica (1768), volume 9, page 454:

**FOOD,** the general term for what is eaten by man and other creatures for the sustenance of life. The scientific aspect of human food is dealt with under NUTRITION; DIET and DIETETICS.

The same source in volume 7, at page 355, contains the following definition:

Food may be defined as that which when taken into the body may be utilized for the formation and repair of body tissues and for the production of energy. \* \* \*

The New Century Dictionary (1946), volume 1, page 597:

**food,** *n.* \* \* \* What is eaten, or taken into the body, for nourishment (as, *food* for man and beast); more broadly, whatever supplies nourishment to organic bodies (as, the *food* of plants); aliment; nutriment; often, more or less solid nutriment, as opposed to *drink*; \* \* \*.

We now examine the definitions of "poppy seed."

Webster's New International Dictionary (1948), page 1921:

**poppy seed.** The seed of the poppy, esp. of the opium poppy. It is used as a food, esp. in bakery products, and is the chief source of poppy-seed oil.

**poppy-seed,** *or* **poppy, oil.** A fixed drying oil obtained from the seeds of the opium poppy. If expressed in the cold, it is colorless or pale yellow (*white* poppy-seed oil) and is used as a salad oil and in cooking; if expressed with the aid of heat, it is dark-colored and inferior (*red* poppy-seed oil) and is used in paints and soap and for burning.

In this connection, our attention has been invited to "Structure and Composition of Foods" by Winton, volume 1, page 429, under the title—

### SEEDS OF THE POPPY FAMILY

#### (Papaveraceae)

SEEDS of species of poppy, grown for food or oil production, or occurring as weed seeds in grain fields, are here described.

### POPPY SEED

*Papaver somniferum* L. = *P. opiiferum* Forsk.

Fr. Pavot. Sp. Adormidera. It. Papavero. Ger. Mohnsamen.

\*      \*      \*      \*      \*      \*      \* .

In general it may be stated that the white-seeded varieties are preferred for opium production, and these are the varieties most commonly grown in India whether for opium or seed. The varieties grown in the Levant, Russia, France, and other parts of Europe for seed are more commonly blue or gray. In addition to their use in oil production the blue seed frequently is added to bread, to which it imparts a peculiar delicate flavor. Rolls with poppy seed sprinkled on the surface are often made by bakers both in Europe and America.

Although, on cross-examination, the witness Hamburg stated that poppy seed is not a food, yet, when interrogated by the court concerning the use of poppy seed, he stated—"It is used by Germans, Hungarians, Italians. They mix it with lakvar, which is really a prune marmalade. It is mixed to go with what they call strudel. That is where the poppy seed enters, and that is placed on dough"; that Italians use it in all types of cakemaking for flavoring; and that poppy-seed oil, in particular, is the desirable part of the seed. Hamburg further testified that the poppy seed is used on top of breakfast rolls and that, after the poppy seed is crushed, "It could be used in cakes, principally and also in puddings."

Aided by the foregoing definitions, and the testimony of the witness Hamburg, we are of the opinion that poppy seed is a "food," within the common meaning of that term. This being so, and, it not being disputed that the poppy-seed mill is a grinding mechanism, we find and hold that it is a household utensil which is excluded from the benefits of the General Agreement on Tariffs and Trade, *supra*, by express terms.

With respect to the grating mill, represented by exhibit 2, the witness testified that it was sold throughout the United States as a cheese and bread grater and that it might also be used to grate potatoes. He described the operation of this implement as follows:

When this item is screwed on to the kitchen table, then this wooden block is lifted and the material to be grated is inserted into this funnel for additional pressure to it. The operator could apply pressure against this drum and then while it is attached to the table, to the kitchen table, this handle will turn and the material will come out ground out of this little funnel.

\* \* \* \* \* \* \*

The metal drum can be turned either way, right or left. It would give a different type of grating. The drum has a regular perforation and the holes that are punched through are raised and form I would say 3 or 4 sharp teeth and since the material falls in between the inner drum and the outer cylinder, it is being grated by means of turning the handle and that is about the function of this machine.

Upon the record, it appears that this item operates exclusively upon products which are unquestionably foods, namely, bread, cheese, and potatoes, so that the question for our consideration is whether the implement is a "food *grinding* or *cutting*" [italics supplied] utensil, within the excepting clause of paragraph 339, as modified, *supra*.

Upon this phase of the case, the attention of the witness Hamburg was directed to the cylinder in exhibit 2 and was cross-examined as follows:

X Q. It has very sharp teeth, hasn't it?—A. Yes, indeed.

X Q. Now, doesn't that cut off, cut the material that is inserted into this exhibit?—A. No.

X Q. What does or do the teeth do?—A. It grates it.

X Q. What do you mean by grating?—A. What the name implies.

X Q. How does it separate what it does?—A. Grating I would compare best to a tearing process.

X Q. These are sharp?—A. Yes.

X Q. They don't cut at all?—A. No.

X Q. How do they tear?—A. By getting hold of the substance and by means of turning the handle, it tears it away.

X Q. Why is it sharp then?—A. In order to get hold of the material, to get a grip on it.

X Q. Does it have to be sharp to get a grip on it?—A. This material *is not sharpened; it is simply punched through*, but each tooth is not chopping [sharpened].

X Q. If you press that hard enough on your hand, will it cut it?—A. No, it would tear your skin away but it wouldn't cut it. [Italics supplied.]

The attention of the witness was then drawn to a definition of the word "grate," appearing in Webster's New International Dictionary—"To reduce to small particles by rubbing with anything rough or indented; as, to *grate* a nutmeg." When Hamburg was asked if that was his understanding of the word "grate," he replied "That's right, or tear."

Webster's New International Dictionary (1948) also defines the word "grate" as—"1. To scrape or rub roughly or harshly; to abrade" and gives as synonyms "Rasp, scrape, grind."

It will be noted that the same authority defines the noun "grater" as "An instrument or utensil with a rough surface, for rubbing off small particles of any substance; as, a nutmeg *grater*." Also, "A machine for grating such roots as turnips and mangels into feed for stock."

Webster (1948 edition) defines "grind" in the following terms:

grind, *v.*; * * * **1.** To reduce to powder by friction, as in a mill, or with the teeth; to crush into small fragments; also, to produce by or as by the action of millstones. **2.** To wear down, polish, or sharpen, by friction; to make smooth, sharp, or pointed; to whet, as a knife or drill. **3.** To rub or press harshly; to rub together with a grating noise; to grate; grit; as, to *grind* the teeth. * * *

Funk & Wagnalls New Standard Dictionary of the English Language (1942) contains the following definitions of "grate" and "grind":

grate, *v.* I. *t.* **1.** To rub or scratch together or on or with some other body, so as to produce a harsh, unpleasant sound; as, to *grate* the teeth; to *grate* a slate-pencil. **2.** To wear away in minute particles by rubbing with some rough body or instrument; as, to *grate* horseradish; figuratively, to diminish by degrees. * * * II. *i.* **1.** To rub or scratch roughly or with a hoarse, discordant sound; as, the saw *grates* on steel. * * *

grind, * * * I. *t.* **1.** To reduce to fine particles or powder by crushing and friction; triturate; as, to *grind* wheat. **2.** To produce by trituration or by rotary motion like that of a mill; as, to *grind* meal; * * * **4.** To rub (one thing against another); grate; grit; as, to *grind* the teeth. * * * II. *i.* **1.** To perform the operation of grinding; turn the crank of, or otherwise work, a mill.* * *

While there is some indication in the foregoing definitions that the words "grate" and "grind" are used synonymously, that is so in a limited sense only, namely, in producing certain discordant or unpleasant sounds such as by grinding the teeth or rubbing or scratching on steel. Where a word has several shades of meaning, we must apply that definition which fits the particular subject appropriately. In the mechanical sense, which applies to the circumstances of this case, there would seem to be a clear distinction between the verbs "grate" and "grind," and we are of the opinion that the merchandise represented by exhibit 2 performs a grating rather than a grinding operation.

It remains to be determined, however, whether the mechanism is a "food *cutting*" utensil. The verb "cut" is defined in Webster's New International Dictionary (1948) as follows:

cut, *v.*; * * * **1. a** To penetrate or divide;—esp. of an edged instrument, as a knife or other tool; to cleave. **b** To make an incision in; to gash; to slash; as, to *cut* one's hand. **c** Figuratively, to penetrate or cleave as with an edged instrument; as, icy blasts that *cut* one to the marrow. **2.** To divide into parts, or to sever a portion or portions from, by an edged tool, as, to *cut* bread. * * *

Funk & Wagnalls New Standard Dictionary of the English Language (1942) gives the following definition of the verb "cut":

cut, * * * **I.** *t.* **1.** To make a gash or incision in, by means of a sharp edge; said of both the instrument and the user or agent. * * * **4.** To divide or sever with a sharp tool or by some sudden intervention; separate into parts as by incisions: * * * **5.** To sever, as by the drawing motion of a sharp-edged tool; * * *.

The uncontradicted testimony of plaintiff's witness discloses that the so-called teeth on the cylinder of exhibit 2 do not rise to the dignity of an "edged instrument" or a "sharp tool" but are in the nature of teeth facing each way which are not sharpened; they are "simply punched through," which we interpret the testimony to mean that the basic material of the cylinder is punched by some machine to create so-called teeth, and these teeth rip or tear the foodstuff—cheese or bread, for instance—which is being processed.

Based upon the record and from such support as is gained by the foregoing definitions, we find and hold that the grating mill represented by exhibit 2 is not a food-grinding or cutting utensil and, hence, is not excluded from the benefits granted by the General Agreement on Tariffs and Trade with reference to paragraph 339, *supra.*

Consistent with the views expressed herein, we overrule the protest insofar as it relates to the item of poppy-seed mills and affirm the decision of the collector of customs. With respect to the grating mills, we sustain the claim in the protest that duty should be assessed thereon at the rate of 20 per centum ad valorem within the provisions of paragraph 339, as modified, *supra.* All other claims having been abandoned are dismissed.

Judgment will be entered accordingly.